UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| CHARLENE MARTIN,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CIVIL NO. 7:16-CV-260-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff Charlene Martin (DE 13) and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (DE 16). Martin brought this action under Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record, will affirm the Commissioner's decision.

    **I. Overview of the Process**

To determine whether a claimant has a compensable disability under the Social Security Act, the administrative law judge ("ALJ") applies a five step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 81 F.3d 825, 835 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps, in summary, are:

> *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.

*Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

*Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

*Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

*Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (internal citations omitted); 20 C.F.R. § 404.1520(g)(1).

**II. Factual and Procedural Background**

*A. Factual Background*

Plaintiff Charlene Martin[1] was born in 1965. (Administrative Record ("AR") 171). She lives by herself in Floyd County, Kentucky with her two dogs. (AR 43). Her most recent education was a two-year college degree in medical coding and billing. (AR 31). Prior to her

---

[1] During the administrative proceedings, Martin used the surname Minor.

alleged disability, Martin worked as a medical billing specialist until she was abruptly laid off in June 2012 when the hospital relocated its billing office. (AR 33, 36).

Martin applied for Disability Insurance Benefits and Supplemental Security Income on March 13, 2014 alleging a disability onset date of August 15, 2013. (AR 172-79). Martin claimed that she was unable to work due to four bulging discs in her lower back, flattening disc in neck, seven screws in her left ankle, and worn out horns in her left knee. (AR 211). Martin's application was denied initially and on reconsideration. (AR 66-66, 85-86). Martin attended the hearing via video teleconference, accompanied by her attorney, and testified on her own behalf. Tina Stambaugh, an impartial vocational expert, also appeared and testified. (AR 24). The ALJ issued a written opinion on February 3, 2016 denying Martin benefits. (AR 10-18). Martin now appeals that decision to this Court.

*B. The Administrative Decision*

The ALJ applied traditional five-step sequential analysis promulgated by the Commissioner, *see* 20 C.F.R. § 404.1520, and found that Martin's claim failed at step five. At step one, the ALJ found that Martin had not engaged in substantial gainful activity since August 15, 2013, the alleged disability onset date. At step two, the ALJ found that Martin suffered the following severe impairments: anxiety disorders; degenerative disc disease; affective disorder; dysfunction – major joints; carpal tunnel syndrome. (AR 12). At step three, the ALJ found that Martin did not have an impairment, or combination thereof, that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. (AR 13-14). Next, the ALJ found that Martin retained, based on all of her impairments, the RFC:

> to perform less than the full range of light work, within these parameters: the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently and she can push and pull as much as she can carry; she can sit six hours in a eight hour work day; she can stand and/or walk for 6 hours out of an eight hour work day but no more than 45 minutes of continuous standing and/or walking; the claimant can frequently

3

handler [*sic*], finger and feel with her bilateral upper extremities; she can frequently climb ramps and stairs but never climb ladders, ropes and scaffolds; she can occasionally stop, kneel, crouch, and crawl; she should avoid concentrated exposure to work at unprotected heights, moving mechanical parts, extreme cold, and vibration; the claimant can deal with changes in a work setting to complete simple, routine tasks.

(AR 14). At step four, the ALJ found that Martin was unable, due to her severe impairments and resulting functional limitations, to perform any of her past relevant work. (AR 17). Finally, at step five, the ALJ considered Martin's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, and found that there existed a significant number of jobs in the national economy that she could perform. (AR 17-18). More specifically, and considering additional limitations not represented by the Medical-Vocational Guidelines, the ALJ found that Martin could work as an office helper, order filler, or inspector and sorter. (AR 17-18). Accordingly, the ALJ found that Martin was not disabled from August 15, 2013 through February 3, 2016. (AR 18).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied Martin's request for review. (AR 1-5); *see* 20 C.F.R. § 422.210(a). Martin has exhausted her administrative remedies and filed a timely appeal in this Court. The parties have filed cross-motions for summary judgment, and this case is now ripe for review under 42 U.S.C. § 405(g).

**III. Standard of Review**

Under the Social Security Act, the Court conducts a limited review of the Commissioner's decision. 42 U.S.C. § 405(g). The Court may only evaluate whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers*, 582 F.3d at 651. Substantial evidence means "more than a scintilla of evidence but less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of*

*Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In assessing the ALJ's decision, the Court cannot "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id.*; *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

**IV. Analysis**

Martin challenges the ALJ's assessment of her RFC. She claims that he improperly discounted the opinion of her treating physician, ignored the opinion of additional treating physicians, and erred in considering other evidence on the record. These arguments are addressed in turn.

Martin's first claim is that the ALJ erred in giving little weight to the opinion of Dr. Karen Gooslin, her treating physician.[2] In July 2014, Dr. Gooslin completed Social Security Interrogatories for Examining Physician's Opinion. In her answers, Dr. Gooslin opined that Martin was disabled due to chronic back pain, anxiety, and depression. (AR 318). She also stated that Martin could lift or carry less than ten pounds, stand or walk less than two hours per day, and sit less than six hours per day. (AR 319-20). Dr. Gooslin completed a second questionnaire in October 2015 in which she stated that Martin was disabled due to degenerative disc disease, arthritis, anxiety, post-traumatic stress disorder, and depression. (AR 678). The second questionnaire contained identical physical impairments as the first. (AR 679).

---

[2] When Dr. Gooslin began treating Martin in April 2014 she used the surname Patton.

The Social Security regulations recognize three types of medical sources: nonexamining sources, nontreating (but examining) sources, and treating sources. 20 C.F.R. § 404.1527; *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Under the "Treating-Source Rule," the opinion of a treating physician is generally entitled to the most weight. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x. 267, 273 (6th Cir. 2015). If a treating source is not given controlling weight, the ALJ is procedurally required to give "good reasons" for discounting the opinion that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)). When considering non-controlling sources, the ALJ must evaluate the following factors in deciding the appropriate weight due: whether the source examined the claimant; the length, frequency, nature, and extent of the treatment relationship; the explanation and supporting evidence presented by the source; consistency of the opinion with the record; specialization; and other factors which support or contradict the opinion. 20 C.F.R. § 404.1527(c).

It is undisputed that Dr. Gooslin was Martin's treating physician and, accordingly, would typically be entitled to controlling weight. The ALJ's gave good reasons for giving Dr. Gooslin's opinion little weight. The ALJ explained that Dr. Gooslin's opinion was not supported by her own treatment notes. *See* 20 C.F.R. § 404.1527(c)(3) (supportability). He cited specifically to the fact that Dr. Gooslin recorded physical limitations based on carpal tunnel syndrome despite a lack of a diagnosis for the condition on the record.[3] Additionally, Dr. Gooslin recorded few physical limitations during her examinations of Martin which conflicted with her questionnaire answers. (AR 390, 395, 485, 493, 497, 500). When Dr.

---

[3] Martin claims that she was diagnosed with carpal tunnel syndrome, but the medical record she cites only indicated that she was to undergo an "EMG to rule out carpal tunnel." (AR 500).

6

Gooslin did report physical limitations, they were normal or less severe than those discussed in the questionnaire. (AR 401, 488, 491). Dr. Gooslin's mental impairments were also inconsistent with her own examination notes, that generally noted normal mental status with the exception of depressed mood. (AR 390, 395, 401, 491, 498, 500). Finally, the ALJ also found that Martin's treatment was inconsistent with a claim of total disability, that she can perform activities of normal life, and that her employment was not terminated because of her impairment. (AR 15-16).

Martin attacks the ALJ's reasons for discounting Dr. Gooslin's opinion as a "misogynistic rant that female physicians cannot be trusted . . . ." (DE 13-1, at 1). This allegation is based on the ALJ's comment that Dr. Gooslin's opinion appeared to "serve[] as an accommodation for the claimant." (AR 16). In a footnote, the ALJ elaborated on this statement:

> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom she sympathizes for one reason or another. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

These *ad hominem* attacks on the ALJ's integrity are baseless. The ALJ's comments, even if misguided, do not concern Dr. Gooslin's gender.[4] Moreover, this argument is largely irrelevant to the court's inquiry as to whether the decision was supported by substantial evidence. The decision by Martin's counsel to accuse the ALJ of misogynistic bias, where there is no evidence that such bias affected the decision, does not serve his client's interests and instead undermines counsel's credibility. *See Bieschke v. Comm'r of Soc. Sec.*, No. 1:07-CV-1125, 2009 WL 735077, at *7-8 (W.D. Mich. Mar. 12, 2009) ("[C]ounsel's *ad hominem*

---

[4] Martin refers to this as "sit and squirm" jurisprudence which the Sixth Circuit has rejected. That characterization is incorrect; the discredited "sit and squirm" test refers to instances were an ALJ rejects a claim based only on his personal observation of the claimant. *See Martin v. Sec'y of Health & Human Servs.*, 735 F.2d 1008, 1009 (6th Cir. 1984) (quoting *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310 (6th Cir. 1983)).

attack on the ALJ . . . . neither serves his client's interests nor reflects well on counsel. On the contrary, it tends to undermine counsel's credibility."). Even assuming the ALJ erred in considering possible sympathy, there is other substantial evidence on the record to support the ALJ's decision to discount Dr. Gooslin's opinion. *See Daniel v. Comm'r of Soc. Sec.*, 527 F. App'x 374, 375 (6th Cir. 2013) ("However, even with possible sympathy removed from the analysis, there is other substantial evidence to support the ALJ's decision on the treating physician's credibility.").

Martin's next claim is that her mental health treatment at Hope Clinic, Three Rivers Hospital, Mountain Comprehensive, and Kentucky River Community Care was ignored by the ALJ in his decision.[5] She argues that these treating physicians should have been accorded controlling weight or the ALJ should have given "good reasons" for discounting their opinion. This argument fails. The Treating Source Rule applies only if the physician supplied a medical opinion, defined as a "judgments about the nature and severity of your impairment(s) . . . ." 20 C.F.R. § 404.1527(a)(1). Martin has not pointed to any opinions contained in these records that the ALJ failed to consider. Instead, the ALJ properly considered these records in reviewing the objective medical evidence. (AR 14 (citing AR 275-718)).

Martin's remaining arguments are both underdeveloped and unavailing. Martin claims the ALJ failed to properly consider her absenteeism necessitated by her doctor's appointments. But Martin has not identified any evidence on the record that the length of these appointments would require her to miss work. *See Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (rejecting plaintiff's absenteeism when it merely "assume[d] she was required to miss entire days of work for each appointment."). Additionally, the ALJ found that Martin was only partially credible as to the "limiting effects" of her symptoms. Next,

---

[5] Here, Martin's counsel again makes an unwarranted *ad hominem* attack that the failure to consider these opinions was because the doctors were "largely female." (DE 13-1, at 6).

Martin claims the ALJ improperly considered her smoking in finding she was not disabled. The ALJ's discussion of Martin's smoking was merely one of many examples cited by the ALJ that she was able to engage in the activities of daily living. Finally, Martin challenges the ALJ's determination that Dr. Jack Reed, a non-examining state agency medical consultant, was entitled to partial weight. Specifically, Martin claims that Dr. Reed, who only viewed medical reports available in August 2014, lacked sufficient evidence to render an opinion. The weight assigned to Dr. Reed was supported by substantial evidence set forth at the hearing stage concerning Martin's durational limits. (AR 16).

## V. Conclusion

For the reasons set forth above, the Court **HEREBY ORDERS**:

1. Plaintiff's motion for summary judgment (DE 13) is **DENIED**;

2. the Commissioner's motion for summary judgment (DE 16) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated March 30, 2018.

*Karen K. Caldwell*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY